**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiff, the putative*
*FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **DEREK LOPER, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>-against-<br><br>**MANETTA ENTERPRISES, INC., ENRICO L. MANETTA, ENRICO R. MANETTA and NICHOLAS MANETTA, Jointly and Severally,**<br><br>**Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Derek Loper ("Loper" or "Plaintiff"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

## NATURE OF THE ACTION

1.     Plaintiff is a former laborer and saw cutter who worked for Defendants on New York City roadways, pursuant to contracts with Consolidated Edison Company of New York, Inc. ("Con Edison"). Throughout the relevant time period, Plaintiff was not paid the applicable

prevailing rate of wages or supplemental benefits for all hours that he worked on excavation projects for Con Edison on New York City roadways and sidewalks. Further, Plaintiff was not paid wages of any kind for time spent traveling between job sites and Defendants' yard and for time spent working in Defendants' yard, resulting in significant unpaid regular and overtime wages each week.

2.     Plaintiff brings this action to recover unpaid overtime premium pay owed to him pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.*  Plaintiff also seeks to recover unpaid prevailing wages, daily overtime and supplemental benefits which he and the members of the putative Class were entitled to receive for work, including weekend work, they performed pursuant to contracts entered into between Defendants and Con Edison, which required payment of prevailing wages.

3.     Plaintiff also brings claims for unpaid wages pursuant to NYLL §§ 190, 193 and for Defendants' failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq*.

4.     Plaintiff brings his FLSA claims on behalf of himself and all other similarly situated employees of Defendants and his NYLL and New York common law claims on behalf of himself and a Federal Rule of Civil Procedure 23 class of all laborers, saw cutters and other construction employees working for Defendants in New York during the six (6) year period preceding the filing of this complaint.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337 and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.      In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

8.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiff:**

9.      <u>Plaintiff Loper</u> was, at all relevant times, an adult individual residing in Kings County, New York.

10.     Throughout the relevant time period, Plaintiff performed work for Defendants on roadways and sidewalks throughout the New York City area and in Defendants' yard, located at 44-17 54th Drive, Maspeth, New York 11378.

11.     Plaintiff consents in writing to be party to this action, pursuant to 29 U.S.C. § 216(b), and his consent form is attached hereto.

**Defendants:**

12.     Defendant Manetta Enterprises, Inc. ("Manetta" or the "Corporate Defendant") is an active New York corporation with its principal place of business located at 44-17 54th Drive, Maspeth, New York 11378.

13.     At all relevant times, the Corporate Defendant has been and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

14.     Upon information and belief, at all relevant times, the Corporate Defendant had gross revenues in excess of $500,000.00.

18.     Upon information and belief, Defendants Enrico L. Manetta ("E. L. Manetta"), Enrico R. Manetta ("E. R. Manetta") and Nicholas Manetta ("N. Manetta" and, together with E. L. Manetta and E. R. Manetta, the "Individual Defendants" and, collectively with the Corporate Defendant, the "Defendants") are owners and operators of Manetta who set the company's payroll policies, including the unlawful practices complained of herein.

19.     Upon information and belief, E. R. Manetta and N. Manetta are sons of Defendant E. L. Manetta.

20.     Throughout the relevant time period, upon information and belief, the Individual Defendants were in charge of determining the company's policies with respect to payroll and otherwise running the business of Manetta.

15.     In corporate filings with the New York State Department of State, Division of Corporations, Enrico Manetta (upon information and belief, E. L. Manetta) is listed as the Chief Executive Officer of the Corporate Defendant.

16.     The Individual Defendants participated in the day-to-day operations of the Corporate Defendant and acted intentionally in their direction and control of Plaintiff and the Corporate Defendant's other similarly situated employees and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendant.

17.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). At all relevant times, Defendants employed, and/or

4

continue to employ, Plaintiff and each of the Collective Action members within the meaning of the FLSA.

18.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

19.     Pursuant to 29 U.S.C. §§ 207 & 216(b), Plaintiff brings his First Cause of Action as a collective action under the FLSA on behalf of himself and the following collective:

> All persons employed by Defendants at any time since March 24, 2017 and through the entry of judgment in this case (the "Collective Action Period") who worked as saw cutters, laborers and other construction workers (the "Collective Action Members").

20.     A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay overtime premiums for work performed in excess of forty (40) hours each week. As a result of these policies, Plaintiff and the Collective Action Members did not receive legally-required overtime premium payments for all hours worked in excess of forty (40) hours per week.

21.     Plaintiff and the Collective Action Members have substantially similar job duties and were paid pursuant to a similar, if not the same, payment structure.

## **NEW YORK RULE 23 CLASS ALLEGATIONS**

22.     Pursuant to the NYLL and the New York common law, Plaintiff brings his Second through Eighth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class:

> All persons employed by Defendants in New York at any time since March 24, 2014 and through the entry of judgment in this case (the "Class Period") who worked as saw cutters, laborers and other construction workers (the "Class Members").

23.     <u>The Class Members are readily ascertainable</u>. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by any means permissible under Federal Rule of Civil Procedure.

24.     <u>The Class Members are so numerous that joinder of all members is impracticable</u>.

25.     Upon information and belief, there are in excess of forty (40) Class Members.

26.     <u>Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting individual Class Members</u>. Such common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include:

a.  whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

b.  whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Class Members;

c.  whether Defendants failed and/or refused to pay Plaintiff and the Class Members wages for all hours worked;

d.  whether Defendants failed to pay overtime wages to Plaintiff and the Class Members for all hours worked over forty (40) in a given week;

e.  whether Defendants failed to provide Plaintiff and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

f.  whether Defendants failed to provide proper wage notice to Plaintiff and Class Members at the beginning of their employment, annually, and when their wage rate(s) changed, as required by the NYLL;

g.  whether Defendants' failure to properly pay Plaintiff and the Class Members lacked a good faith basis; and

h.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

27.  <u>Plaintiff's claims are typical of the Class Members' claims</u>. Plaintiff, like all Class Members, was a construction employee of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiff, like all Class Members, was, *inter alia*, was not paid overtime wages for all hours worked over forty (40) in a given workweek; was not paid wages of any kind for certain hours worked, including time spent working in the yard and traveling to and from the yard and the job sites; and was not provided with proper wage notice and wage statements. If Defendants are liable to the Class Representative for the Class claims enumerated in this Complaint, they are also liable to all Class Members. If Defendants are liable to Plaintiff for the claims enumerated in this Complaint, they are also liable to all Class Members.

28.  <u>Plaintiff and his Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiff and the Class Members, and Plaintiff brings this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover his own damages.

29.  Plaintiff's counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

30.  <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

31.  Defendants are sophisticated parties with substantial resources. The individual plaintiff lacks the financial resources to vigorously prosecute a lawsuit in federal court against

corporate defendants.

32.     The individual members of the Class have no interest or capacity to bring separate actions; Plaintiff is unaware of any other currently pending litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

**Defendants' Company**

33.     At all relevant times, Defendant Manetta Enterprises, Inc. has been in the construction contracting business.

34.     Defendant Manetta Enterprises, Inc. was registered with the New York State Department of State, Division of Corporations on January 31, 2003.

35.     According to the public LinkedIn profile of "Enrico Manetta" (upon information and belief, Defendant E. L. Manetta):

"[b]ased in Maspeth, New York, Enrico Manetta leads the construction firm Manetta Enterprises, Inc., as president and CEO. The company undertakes a wide range of projects, with an emphasis on installing utility electrical- and gas-distribution systems. Enrico Manetta personally oversees all aspects of daily operations. He guides a workforce that fluctuates between 40 and 150 employees and spans job sites throughout New York City's five boroughs and Westchester County. Mr. Manetta's firm progressed from sidewalk repair projects it accepted in the 1990s to the installation of telecommunications and utility infrastructure it performs today. This enabled the creation of vital communication lines throughout Manhattan. Mr. Manetta's firm played a prominent role in the emergency

rebuilding efforts following the terror attacks of 9/11. His firm helped install infrastructure for Manhattan electrical distribution and received a commendation letter from utility companies for its sustained efforts."

*See* https://www.linkedin.com/in/enricomanetta.

36.     According to E. L. Manetta's public LinkedIn profile, E. L. Manetta has been the president of Manetta Enterprises Inc. since August 1991. *Id*.

37.     At all relevant times, the Individual Defendants have been in charge of the day-to-day operations of Manetta including, among other things, hiring and firing employees and setting the schedules and wage rates of employees.

38.     Upon information and belief, the Individual Defendants handled the operations of Manetta's business and gave direction to their supervisors and foremen to ensure that the work in the field was being conducted in accordance with their policies and procedures, including the policies complained of herein.

39.     Upon information and belief, Manetta entered into contracts as prime and/or sub-contractors with Con Edison and other entities that required all employees working on the projects, including Plaintiff and the Class Members, to be paid prevailing wages for work performed on New York City roadways and sidewalks.

40.     Plaintiff Loper observed Defendants E. R. Manetta and N. Manetta in the yard and on the job sites on a daily basis giving orders to supervisors, speaking with clients, securing business for Manetta, speaking with inspectors, and otherwise running the business operations of Manetta. On approximately five (5) or six (6) occasions, Plaintiff Loper observed Defendants E. R. Manetta and N. Manetta dropping off checks at job sites.

41.     Upon information and belief, Mike Calzo and Kevin Connelly are supervisors at

Manetta. Upon information and belief, the Individual Defendants are in constant contact with Mike Calzo, Kevin Connelly and Defendants' other supervisors and foremen to ensure that the company is operating in accordance with their standards and policies.

**The Con Edison Contracts**

42.     Upon information and belief, Defendants have entered into certain contracts, as either a subcontractor or prime contractor, with Con Edison and/or other public utility agencies to provide certain construction work on New York City roadways and sidewalks, or with prime contractors not currently known, to furnish labor, material and equipment to perform work on New York City roadways and sidewalks (the "Con Edison Contracts").

43.     Upon information and belief, the Con Edison Contracts obligated Defendants to pay Plaintiff and the Class Members at or above the local prevailing wage rates, including any required supplemental benefits and overtime premiums for hours worked in excess of forty (40) hours per week, eight (8) hours per day, hours worked on Saturday and Sunday and hours worked during the evening. Specifically, the "labor" provision of Con Edison Standard Terms and Conditions for Construction Contracts ("Contract Terms") provides in pertinent part:

> Where Contractor employs workers on sites where a permit to use or open a street (including excavating the street) is required and New York City Administrative Code Section 19-142, or its successor . . . is applicable, Contractor agrees that . . . the prevailing scale of union wages shall be the prevailing wage for similar titles as established by the Comptroller of the City of New York pursuant to Section 220 of the New York State Labor Law . . . paid to those so employed, and Contractor shall pay that prevailing wage to workers so employed.

44.     Upon information and belief, the Contract Terms, including the labor provision requiring payment of prevailing wages, were incorporated into all of the Con Edison Contracts.

45.     Defendants' failure to pay Plaintiff proper prevailing wage rates, supplemental benefits and overtime premiums was a corporate policy that also applied to all of Defendants' other

similarly situated employees.

46.     As employees of Defendants who were assigned to work on Defendants' excavation projects, Plaintiff and the Class Members were intended third-party beneficiaries of Defendants' Con Edison Contracts.

47.     Upon information and belief, each project which involved street opening upon which Manetta performed work pursuant to the Con Edison Contracts, required a Street Opening Permit issued by the NYC Department of Transportation (DOT). The Street Opening Permit included various stipulations for the work that was being performed, including, but not limited to, stipulations regarding the wages that were to be paid to all workers on the excavations. Specifically, the permits provided:

WAGE01     NYC ADMINISTRATIVE CODE, 19-142, WORKERS ON EXCAVATIONS: A PERSON TO WHOM A PERMIT MAY BE ISSUED, TO USE OR OPEN A STREET, SHALL BE REQUIRED, BEFORE SUCH PERMIT MAY BE ISSUED, TO AGREE THAT NONE BUT COMPETENT WORKERS, SKILLED IN THE WORK REQUIRED OF THEM, SHALL BE EMPLOYED THEREON, (CONT. ON STIP WAGE02)

WAGE02     ...AND THAT THE PREVAILING SCALE OF UNION WAGES SHALL BE THE PREVAILING WAGE FOR SIMILAR TITLES AS ESTABLISHED BY THE FISCAL OFFICER PURSUANT TO SEC. TWO HUNDRED TWENTY OF THE LABOR LAW, PAID TO THOSE SO EMPLOYED.

48.     The promise to pay and ensure payment of the prevailing wage and supplemental benefit rate stated in the Con Edison Contracts was made for the benefit of all workers furnishing labor on New York City roadways and sidewalks, and, as such, the workers furnishing labor on New York City roadways and sidewalks are the beneficiaries of that promise and the contracts entered into between Defendants and the public utility or other public agencies.

49.     Upon information and belief, in furtherance of the Con Edison Contracts entered into by Defendants, Plaintiff and other members of the putative Class performed various saw

11

cutting and construction labor tasks including, but not limited to cutting the street with a core cutting machine, removing and replacing plates, filling holes, cleaning debris from the street, digging any part of the street that the backhoe was not able to excavate, jackhammering concrete, carrying pipes, loading and unloading trucks to travel to and from the job site, erecting and removing cones and barricades, laying pipes and directing vehicular and pedestrian traffic in and around the zone of construction.

50.     Upon information and belief, Defendant Manetta is compensated by Con Edison, or the other entities with whom Manetta contracts to provide construction services, at the prevailing union wage rates for all of the workers on the projects, including Plaintiff and Defendants' other construction employees.

**Plaintiff's Work for Defendants**

51.     Plaintiff Loper worked for Defendants as a laborer and saw cutter from in or around 2012 through in or around 2014 and again from on or about April 10, 2017 through in or around mid-November 2018 (collectively, the "Loper Employment Period"). Throughout the Loper Employment Period, Plaintiff Loper performed work on public roadways and sidewalks in all five (5) boroughs of New York City.

52.     Throughout the Loper Employment Period, Plaintiff Loper's job duties primarily included cutting the street with a core cutting machine, removing and replacing plates, filling holes, cleaning debris from the street, digging any part of the street that the backhoe was not able to excavate, jackhammering, carrying pipes, loading and unloading trucks, erecting and removing cones and barricades, laying pipes and directing vehicular and pedestrian traffic in and about the zone of construction. During a period of approximately (5) months, from in or around May 2018 through in or around September 2018, Plaintiff Loper was assigned to use a large walk-behind saw

cutter machine on a near daily basis.

53.     Throughout the Loper Employment Period, Plaintiff Loper typically worked five (5) days per week, Monday through Friday, from approximately 6:00 am through approximately 3:00 pm, and sometimes later, for a total of approximately forty-five (45) hours per week, and sometimes more, including time spent working in the yard and travel time from the yard to the job site.

54.     Throughout the Loper Employment Period, Defendants required Plaintiff Loper and their other similarly situated employees to report to Defendants' yard, located at 44-17 54th Drive, Maspeth, New York 11378, at 6:00 am to meet with foremen and crew members and load supplies, tools and equipment onto trucks. After performing work at the yard, Plaintiff typically travelled to the job site in order to arrive at the job site by 7:00 am. At approximately 2:30 pm, Plaintiff and his fellow crew members typically began dismantling the job site by refilling holes that were excavated during the day, putting metallic plates over the excavated area to secure the area if they were scheduled to return to the site the next day and removing barricades, so that they would be able to leave the site by approximately 3:00 pm.

55.     Approximately twice per month, pursuant to Defendants' instructions, which he typically received from either E. R. Manetta or Mike Calzo, Plaintiff Loper was required to return to the Maspeth yard after he left the job site to unload machinery and tools. When he was required to return to the yard, he typically spent at least thirty (30) minutes traveling, depending on traffic, and approximately an additional twenty (20) minutes unloading materials.

56.     During the summer, Plaintiff Loper typically worked longer shifts of eight to twelve (8-12), and sometimes up to fifteen (15), hours per day, for a total of approximately fifty-five (55) hours per week on the job site, not including travel time or time spent in the yard. Occasionally,

Plaintiff Loper worked up to seventy (70) hours per week on the job site if he was required to perform emergency work.

57.     During the winter season, Plaintiff Loper typically worked approximately forty to forty-two (40-42) hours per week on the job site, not including travel time or time spent in the yard.

58.     On approximately three (3) or four (4) occasions throughout his employment with Defendants, Plaintiff Loper was required to perform work on a Saturday when someone from a weekend crew was absent. Plaintiff Loper typically worked a total of approximately eight (8) hours on the job site when he worked on a Saturday, not including travel time or time spent in the yard.

59.     During the period that Plaintiff Loper was assigned to use the saw cutter on a near daily basis, from in or around May 2018 through in or around September 2018, Plaintiff was required to return to the yard from the job sites to park the saw cutter machine in a secure place in the yard. On average, it took him ten to fifteen (10-15) minutes, in addition to the time he spent traveling back to the yard from the job site, to park and secure the saw cutter.

60.     Plaintiff Loper became a member of the Local 731 Laborers' Union in approximately 2009.  At the time that Plaintiff Loper was re-hired by Defendants on or about April 17, 2017, he was not an active member of Local 731.

61.     After approximately one (1) year into his second period of employment, in or around April 2018, Plaintiff Loper contacted Local 731 to inquire as to whether Defendants had sent paperwork informing the union that he had been working for Manetta for one (1) year as a laborer. An administrative employee at Local 731 informed him that the union did not have records from Manetta informing Local 731 that Loper was working for the company. Loper subsequently brought all of the paystubs that he was able to locate to the same Local 731 employee, who made

copies and informed him that a union delegate would contact him soon. After weeks of not hearing anything further from the union, Loper returned to the union hall in June 2018 to ask what had happened with his paperwork and why he was not receiving union benefits. The Local 731 employee with whom he had previously spoken and left his paystubs informed him that she did not have records indicating that he had brought any documentation to the union proving that he had worked as a laborer.

62.     Approximately one (1) month later, in or around July 2018, Plaintiff Loper noticed that his supervisor, Mike Calzo began calling him to work less and less frequently, claiming that the work had slowed down. Thus, starting in or around July 2018 and continuing through approximately August or September 2018, Calzo would occasionally tell Loper that there was no work for him. Starting in or around September or October 2018, Calzo only called Loper into work approximately two to four (2-4) days per week until Defendants eventually stopped assigning him to jobs entirely in or around mid-November 2018.

63.     Although Calzo repeatedly claimed that Loper was not being called to work due to an overall shortage of work and that "[he] would call [Loper] when he needed him," Loper learned from both "Arthur," a Manetta supervisor, and another employee who helped him to operate the saw cutter, that Defendants' other construction employees were continuing to work and that Manetta was operating as normal on a number of job sites throughout New York City. Further, Plaintiff Loper frequently saw Manetta employees working in his neighborhood. It is Plaintiff's belief that Defendants cut his hours due to his efforts to get into the Local 731 union.

64.     During Loper's first period of employment, from in or around 2012 through in or around 2014, Plaintiff Loper was hired as a laborer apprentice. Although Plaintiff Loper does not recall the precise rate that he was paid at that time, Loper estimates that he was paid approximately

seventeen dollars and eighty cents ($17.80) when he first began working as an apprentice, which gradually increased with every one thousand (1,000) hours of apprenticeship coursework that he completed, to between approximately thirty-five dollars ($35.00) and thirty-eight dollars ($38.00) when he left his first period of employment with Manetta in or around 2014. Plaintiff only received these wages for hours spent working on the job sites and did not receive wages of any kind for time spent working in the yard and traveling between the job sites and the yard.

65.     Defendants hired Plaintiff Loper as a laborer during his second period of employment starting on or about April 10, 2017. Despite the fact that Plaintiff's supervisor, Mike Calzo, specifically informed him that he would be paid at the applicable laborer rate, he was generally paid a slightly lower base rate than the rates listed for a "Laborer (Foundation, Concrete, Excavating, Street Pipe Layer and Common)" from the Office of the Comptroller, City of New York's § 220 Prevailing Wage Schedules.

66.     From the start of Loper's second period of employment in or around April 2017 through in or around October 2017, Plaintiff Loper was paid approximately forty dollars and eighty-five cents ($40.85) per hour.

67.     From in or around October 2017 through in or around June 2018, Plaintiff Loper was paid forty-one dollars and thirty-five cents ($41.35) per hour.

68.     From in or around July 2018 through the end of the Loper Employment Period, Plaintiff Loper was paid forty-one dollars and eighty-five cents ($41.85) per hour.

69.     Throughout his employment with Defendants, Plaintiff Loper was not paid supplemental benefits of any kind.

70.     Throughout the Loper Employment Period, Plaintiff Loper was paid via a payroll check, which he typically received each week from his supervisor, Mike Calzo, in the Maspeth

office in the morning before leaving for the job site.

71.     Throughout the Loper Employment Period, Plaintiff Loper was paid only for time spent working on job sites and did not receive wages of any kind for time spent in the yard before or after working on the job sites or for time spent traveling to and from job sites. Thus, although he was paid one and one-half (1.5) times his regular hourly rate for time spent on the job site, he is owed significant unpaid overtime wages each week for time spent working in the yard and traveling between job sites and the yard.

72.     Throughout the Loper Employment Period, Defendants' foremen maintained time sheets on which they recorded the names of employees on the job sites as well as the times that they allegedly started and ended each day. Upon information and belief, the foremen typically recorded employees' start times as 7:00 am and their end times as 3:00 pm, regardless of when the crew actually started and ended. When Plaintiff and Defendants' other construction workers worked longer hours, which typically occurred during the summer months, the foremen reported the extra hours to the central office.

73.     Throughout Plaintiff's employment, Defendants did not provide Loper with a way to record his own hours worked on the job sites. Moreover, Defendants did not provide any formal timekeeping system whereby Plaintiff Loper and their other construction employees were able to record time spent working in the Maspeth yard or traveling between the yard and the job sites.

74.     On at least one occasion, Plaintiff Loper complained to his supervisor, Mike Calzo, that he was not receiving travel time, as it was his belief that certain other employees of Manetta were being paid for time spent traveling between the yard and the job sites. Calzo responded by informing Loper that Defendants were not going to pay him for travel time because it was never discussed as part of his compensation. Calzo then instructed Loper to end the conversation and

pretend it had never happened.

75.     Plaintiff Loper alleges that he did not receive a proper wage notice when he was hired and/or before a change of pay rate, as required by the NYLL, from Defendants at any point during the Relevant Time Period.

76.     Plaintiff further alleges that his paystubs did not show an accurate accounting of all hours that he had worked during the workweek.

77.     Defendants have been sued in this Court for unpaid union/prevailing wages, unpaid minimum wages and unpaid overtime premiums on at least two (2) previous occasions in *Wislaw Mroz and Daniel Mroz v. Manco Enterprises, Inc., Manetta Enterprises, Inc. and Enrico Manetta*, Civil Action No. 11-cv-3340, which was dismissed in December 2012, *Adam Mroz v. Manco Enterprises, Inc., Manetta Enterprises, Inc. and Enrico Manetta*, Civil Action No. 14-cv-00291, Civil Action No. 14-cv-00291, which was dismissed in January 2015. Thus, because Defendants were on notice of the relevant state and federal wage-and-hour laws, Defendants willfully violated Plaintiff's and the Class Member's rights in failing to pay wages for all hours worked, the correct prevailing rate of wages and supplemental benefits and overtime premiums for hours worked in excess of forty (40) in a week.

78.     Defendants' failure to pay minimum wages, wages of any kind for time spent working in the yard and traveling between the yard and the job sites, and overtime premiums of one and one-half (1.5) times the regular hourly rate for all hours worked in excess of forty (40) per week was a corporate policy that applied to all laborers, saw cutters and other construction workers employed by Defendants.

79.     Upon information and belief, during the period of time for which Plaintiff and the members of the putative Class performed work on New York City roadways, Defendants failed to

ensure payment of the correct prevailing rate of wages and supplemental benefits, including overtime pay, to which Plaintiff and other members of the putative Class were entitled.

80.    Defendants failed to provide Plaintiff and their other similarly situated employees with proper wage notices at the time of hire or before a change of pay rate or proper wage statement(s) with every payment of wages or accurate wage statements pursuant to the NYLL.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiff and the Collective Action Members)**

81.    Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

82.    Defendants violated the FLSA overtime rights of Plaintiff and the Collective Action Members by improperly treating them as exempt from the FLSA when they performed non-exempt duties and failing to pay overtime premiums of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

83.    By failing to pay overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

84.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

85.    Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages

for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID OVERTIME
### (Brought on Behalf of Plaintiff and the Class Members)

86.    Plaintiff, on behalf of herself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

87.    Defendants violated the NYLL overtime rights of the Plaintiff and the Class Members by improperly treating them as exempt from the NYLL when they performed non-exempt duties and failing to pay overtime premiums consisting of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

88.    Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

89.    Defendants' failure to pay overtime premium compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## THIRD CAUSE OF ACTION
## NEW YORK LABOR LAW – FAILURE TO PAY WAGES

**(Brought on Behalf of Plaintiff and the Class Members)**

90.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

91.     Pursuant to NYLL § 191 and the cases interpreting same, workers such as Plaintiff and the Class Members are entitled to be paid all their weekly wages "not later than seven calendar days after the end of the week in which wages are earned." Thus, Defendants violated NYLL § 191 by failing to pay Plaintiff all of their wages earned within the week such wages were due.

92.     Pursuant to NYLL § 193, "No employer shall make any deduction from the wages of an employee," such as Plaintiff and the Class Members, that is not otherwise authorized by law or by the employee.

93.     By withholding wages and overtime compensation from Plaintiff, pursuant to NYLL § 193 and the cases interpreting same, Defendants made unlawful deductions in wages owed to Plaintiff.

94.     Defendants' failure to pay Plaintiff wages of any kind for time spent working in the yard and traveling between the yard and the job sites, violated NYLL §§ 191 and 193.

95.     Defendants' failure to comply with NYLL §§ 191 and 193 caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid wages, including piece-rate and/or commission payments, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**BREACH OF CONTRACT**

21

**(Brought on Behalf of Plaintiff and the Class Members)**

96.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

97.     Upon information and belief, the Con Edison Contracts entered into by Defendants contained schedules of the prevailing rates of wages and supplemental benefits or reference to the NYLL provisions governing payment of prevailing wages to be paid to Plaintiff and the employees performing work pursuant to such contracts.

98.     Those prevailing rates of wages and supplemental benefits were made part of the Con Edison Contracts for the benefit of the Plaintiff and the other employees performing work pursuant to such contracts. In the event that the contracts or agreements entered into failed to explicitly contain prevailing wage schedules, the prevailing wage requirements were supplemented as a matter of law, requiring Defendants to pay the Plaintiff and Class Members prevailing wages, daily/weekly overtime and supplemental benefits for all work performed.

99.     Defendants' failure to pay Plaintiff at the correct prevailing wage rates for straight time, overtime, and supplemental benefits for work performed on Public Works Projects constituted a material breach of the contracts entered into directly or indirectly between Defendants and certain public entities.

100.    As a result of Defendants' failure to pay Plaintiff at prevailing wage rates, they are entitled to relief from Defendants for breach of contract under New York common law of contracts.

**FIFTH CAUSE OF ACTION**
**UNJUST ENRICHMENT & QUANTUM MERUIT**

**(Pled In The Alternative)**
**(Brought on Behalf of Plaintiff and the Class Members)**

101.   Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

102.   Based on Defendants' failure to pay Plaintiff the appropriate prevailing wage rates, Defendants were unjustly enriched at the expense of Plaintiff.

103.   Equity and good conscience require that Defendants pay restitution to Plaintiff.

104.   Upon information and belief, when Defendants entered into the contract, they agreed to pay the required prevailing wages, overtime, shift-differential and holiday premiums, and supplemental benefit rates of pay to Plaintiff and other employees who performed work pursuant to the contracts.

105.   Plaintiff provided valuable services to Defendants performing prevailing wage jobs for which Plaintiff expected compensation. Defendants knowingly accepted such services yet failed to pay Plaintiff the reasonable value of such services as defined by the New York State and New York City prevailing wage schedules.

106.   As a result of Defendants' failure to pay Plaintiff at prevailing wage rates on prevailing wage jobs and Defendants' corresponding unjust enrichment, Plaintiff are entitled to relief from Defendants under New York's common law of unjust enrichment.

107.   As a result of Defendants' failure to pay Plaintiff the reasonable value of the valuable services they rendered, Plaintiff is entitled to relief from Defendants under New York's common law of quantum meruit.

**SIXTH CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW – WAGE STATEMENT VIOLATIONS</u>**

**(Brought on Behalf of Plaintiff and the Class Members)**

108. Plaintiff, on behalf of herself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

109. Defendants have willfully failed to supply Plaintiff and the Class Members a proper wage statement as required by Article 6, § 195(3).

110. Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants two hundred fifty dollars ($250.00) per employee for each workweek that the violations occurred or continue to occur, or a total of five thousand dollars ($5,000) per employee, as provided for by NYLL §§ 198(1-d) liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**SEVENTH CAUSE OF ACTION**
**NEW YORK LABOR LAW –WAGE NOTICE VIOLATIONS**
**(Brought on Behalf of Plaintiff and the Class Members)**

111. Plaintiff, on behalf of herself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

112. Defendant has willfully failed to supply Plaintiff and the Class Members notice as required by Article 6, § 195, on the date of hire and February 1 of each year, in English or in the language identified by Plaintiff and the Class Members as their primary language, containing Plaintiff's and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with

NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

113.    Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants fifty dollars ($50.00) per employee for each day that the violations occurred or continue to occur, or a total of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, § 198(1-b), liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of himself and all other similarly situated Collective Action Members and Class Members, respectfully requests that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Class, appointing Plaintiff and his counsel to represent the Class and ordering appropriate monetary, equitable and injunctive relief to remedy Defendants' violation of the common law and New York State law;

c.    An order tolling the statute of limitations;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL and New York Common Law;

e.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.    An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.    An award of compensatory damages as a result of Defendants' failure to pay all wages to which Plaintiff and the Class Members are entitled, pursuant to the NYLL and supporting regulations;

h.    An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

i.    An award of liquidated damages for Defendants' failure to pay all wages to which Plaintiff and the Class Members are entitled, pursuant to the NYLL and supporting regulations

j.    An award of two hundred fifty dollars ($250.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(3), pertaining to distribution of wage statements, occurred or continue to occur, or a total of five

thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1-d);

k.    An award of fifty dollars ($50.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(1), pertaining to distribution of wage notice, occurred or continue to occur, or a total of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL § 198(1-b);

l.    An award of monetary damages to be proven at trial for all unpaid prevailing wages, daily/weekly overtime and supplemental benefits owed to Plaintiff and the Class;

m.    An award of prejudgment and post-judgment interest;

n.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

o.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
      March 24, 2020

Respectfully submitted,

**PELTON GRAHAM LLC**

By:  _____

Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700

Facsimile: (212) 385-0800

*Attorneys for Plaintiff, the putative FLSA Collective
and Class*

**CONSENT TO BECOME PARTY PLAINTIFF**

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Manetta Industries, Inc., Manetta Enterprises, Inc., et al, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct.  I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.  I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees.  I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first.  I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf.  I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


_Derek Loper_
Signature

_DEREK LOPER_
Printed Name