# PELTON GRAHAM LLC

ADVOCATES FOR JUSTICE

August 24, 2022

Brent E. Pelton, Esq.
Pelton@PeltonGraham.com

**VIA CM/ECF**

Honorable Sanket J. Bulsara
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      **RE:**   *Loper v. Manetta Enterprises, Inc. et al.*
            <u>Civil Action No. 20 Civ. 01532 (DG)(SJB)</u>

Dear Judge Bulsara:

      This office represents named plaintiffs Derek Loper, Manuel Barrera, Sylwester Kurpiewski, Raul Antonio Chabla Guaman, Dariusz Hader and Candelario Gamez (collectively, the "Named Plaintiffs"), as well as thirty-three (33) opt-in plaintiffs (together, with the Named Plaintiffs, the "Plaintiffs"), in the above-referenced matter. We write, jointly with counsel for Manetta Enterprises, Inc. ("MEI"), Manco Enterprises of NY, Inc. ("Manco Enterprises"), Manco Contracting Co., Inc. ("Manco Contracting" and, together with Manco Enterprises, "Manco"), Enrico Manetta (hereinafter "E. Manetta," sued herein as "E. L. Manetta"), Enrico R. Manetta ("E. R. Manetta") and Nicolas Manetta ("N. Manetta" and, collectively with MEI, Manco, E. L. Manetta and E. R. Manetta, the "Defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) and the Court's August 9, 2022 Order. Counsel for the parties respectfully submit that the Settlement Agreement (attached as **Exhibit A** to the Affidavit of Brent E. Pelton, Esq.) constitutes a fair and reasonable compromise of this matter which should be approved by the Court. The parties sincerely apologize for the late filing.

    **I.**     **Background and Procedural History**

      Plaintiff Derek Loper filed a Complaint against MEI and the Individual Defendants on March 24, 2020, seeking unpaid overtime premiums and unpaid wages for time allegedly spent working in Defendants' Maspeth-based yard and traveling between jobsites and Defendants' yard, unpaid prevailing wages and supplemental benefits for time spent working on Con Edison excavations on New York public streets and damages for Defendants' alleged failure to provide wage notices or accurate wage statements. (Dkt. No. 1). Defendants filed their Answer on June 7, 2020, denying all material allegations. (Dkt. No. 12).

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104  Tel. 415-437-9100  Fax 212-385-0800

www.PeltonGraham.com

Magistrate Sanket J. Bulsara
FLSA Settlement Fairness Letter
Page **2** of **7**

On July 9, 2020, the parties filed their consent motion for conditional certification, which was granted the same day. (Dkt. No. 19). Thirty-three (33) individuals subsequently exercised their right to join the lawsuit by filing a Consent to Become a Party Plaintiff form with the Court.

Plaintiffs filed an Amended Complaint on February 28, 2021, adding Plaintiffs Barrera, Kurpiewski, Chabla, Hader and Gamez as named plaintiffs and the Manco corporate entities as named defendants. (Dkt. No. 66, the "Amended Complaint"). Plaintiff Kurpiewski, a former dump truck driver, additionally brought a claim for alleged unreimbursed business expenses based on his alleged partial payment of a judgment resulting from an on-the-job traffic accident. Defendants filed their Answer to Plaintiffs' Amended Complaint on April 12, 2021. (Dkt. No. 71, the "Answer"), again denying all material allegations.

Over the course of the litigation, the parties have exchanged voluminous records, including paystubs, copies of supplemental checks, earnings reports, driver and excavator's reports and daily log sheets and conducted the depositions of named plaintiffs Loper and Kurpiewski and opt-in plaintiff David Quintero, as well as Defendant E. Manetta.

During a status conference before Your Honor on January 4, 2022, the parties expressed that they wished to engage in mediation and subsequently participated in a full-day mediation session with James A. Brown, Esq. of the EDNY Mediation Program on February 17, 2022. While the session did not end in a resolution, the parties had numerous additional mediation discussions with the assistance of Mr. Brown over the course of several months until in or around mid-May 2022, when the parties decided they were sufficiently close to a resolution to navigate settlement discussions themselves. Over the course of the next couple of months, the parties continued active settlement talks and informed the Court that they had reached a finalized settlement agreement, memorialized in the parties' Settlement Agreement and Wage and Hour Release (hereinafter the "Settlement Agreement," Pelton Aff. Ex. A) on August 8, 2022. (Dkt. No. 88).

## II.     The Settlement Accounts for Litigation Risk

Throughout the litigation, the parties have disputed several issues of fact concerning Plaintiffs' employment with Defendants. The named and opt-in plaintiffs are former laborers, sawcutters, backhoe operators, working foremen, drivers, an oiler and a crane operator who allegedly worked for Defendants on public streets in New York City and Westchester County, pursuant to contracts with Con Edison. During the relevant time period, plaintiffs allege that they were required to report to Defendants' yards in Maspeth and Mount Vernon between 6:00 am and 6:30 am to get their daily work assignments and perform a variety of tasks to prepare for the workday, including gathering supplies and loading and removing debris from trucks. It is Plaintiffs' position that despite the fact that Plaintiffs were required to perform these preliminary tasks before leaving for the jobsite, Defendants routinely did not start recording field employees' time until 7:00 am. Additionally, Plaintiffs allege that although certain employees were required to return to the yard at the end of the day to drop off debris, store and/or inspect construction equipment or perform other post-work tasks, they were compensated only for time spent on Con Ed worksites. Defendants vehemently argue that Plaintiffs were paid for all hours that they worked

Magistrate Sanket J. Bulsara
FLSA Settlement Fairness Letter
Page **3** of **7**

and that employees came to the yard purely for the convenience of hitching a ride to the jobsite and were not required to report there at any time.

Plaintiffs further allege that during the relevant time period, Defendants entered into contracts with Con Edison to provide construction work on New York public streets that contracts required the payment of prevailing wages and supplemental benefits. At least certain Con Edison projects additionally required New York City Street Opening Permits, which provide that workers on excavations must be paid prevailing wages pursuant to NYC Administrative Code 19-142. Non-union employees allege that they did not receive benefits of any kind during their respective employment periods, whereas certain union employees allege that they received benefits on an irregular basis. These employees additionally allege that they occasionally received overtime on a separate expense/invoice check that did not include the payment of supplemental benefits. It is also alleged that certain plaintiffs, who worked as operators and hazardous waste removal laborers, were misclassified and paid a lower rate than that to which they were entitled based on the nature of the work that they performed on Con Edison worksites.

Finally, Plaintiffs allege that they did not receive wage notices when they were hired or before a change in pay rate, as required by the NYLL, and that, because Defendants allegedly did not record time spent working in the yard or traveling between the yard and the jobsites and issued separate "invoice" checks for certain overtime hours, their paystubs did not show an accurate accounting of all hours that they worked during the workweek.

Again, the Defendants have denied all of the salient allegations asserted by the Plaintiffs, and have also asserted that the various unions involved have already taken steps to protect the rights of their members.

Prior to the mediation session, Plaintiffs' counsel exchanged a damages analysis based on Defendants' time and payroll records, as well as Plaintiffs' best estimates of the amount of time they claim to have spent working in Defendants' yard and traveling between the yard the jobsites. In total, Plaintiffs calculated $4,356,134.11, including $2,411,217.29 in unpaid prevailing wages and supplemental benefits, $151,045.13 in prevailing wage overtime, $466,102.54 in unpaid wages for yard and travel time, $270,000.00 in damages for wage notice and wage statement violations, $466,102.54 in FLSA and NYLL liquidated damages, $574,896.39 in NYLL interest and $16,770.22 in unreimbursed business expenses for Plaintiff Kurpiewski.

During the course of settlement discussions, Defendants provided recent agreements between E. Manetta and various labor unions, including Locals 15, 60, 137, 456 and 1010, reflecting an agreement by Defendants to pay large sums to the benefits funds of these unions. Thus, Plaintiffs prepared a revised damages analysis removing certain damages for unpaid supplemental benefits for known union members, which reduced Plaintiffs' alleged prevailing wage damages to $1,818,291.73.

Perhaps the biggest litigation risk, however, is Defendants' ability to pay a judgment if one were obtained by Plaintiffs. Counsel for Defendants have repeatedly informed Plaintiffs, and E.

Manetta testified during his deposition, that while Defendants are actively seeking to get back into business with Con Edison, Defendants' companies have not operated since October 2019. Further, on May 11, 2022, counsel for Argonaut Insurance Company informed the Court in a matter concerning unpaid insurance premiums (i.e., *Argonaut Insurance Company v. Manetta Enterprises, Inc*., E.D.N.Y., Civil Action No. 16-cv-00482) that a January 19, 2021 judgment in the amount of $2,481,683.44 had been satisfied. As such, rather than move forward with lengthy and costly litigation and potentially recover a judgment that may be impossible to collect, Plaintiffs prefer to settle now, on an individual basis, for an amount that they would be guaranteed to receive under the terms of the settlement

Thus, due to concerns about Defendants' financial viability and our desire to maximize recovery for the individuals who have already joined the lawsuit, the parties believe that the settlement amount (i.e., $700,000.00) is a fair recovery based on the risks associated with establishing the calculated damages, the risks associated with proceeding to trial, and Defendants' ability to pay, which was a substantial factor in ultimately reaching the settlement number that was agreed to by the parties.

### III.   Settlement Terms

As set forth in the Settlement Agreement, the parties have agreed to settle this action for a total amount of $700,000.00 (the "Settlement Amount"), inclusive of attorney's fees and costs. Of the Settlement Amount, $235,563.51 (consisting of $3,345.62 in expenses and $232,217.89 in attorneys' fees) is payable to Plaintiffs' counsel. The remaining $464,436.49 is payable directly to Plaintiffs (the "Net Settlement Amount").

In keeping with the trend in this circuit following *Cheeks*, the parties have agreed to a wage-and-hour release, to be signed by the named and opt-in plaintiffs, for any claims arising before Plaintiffs signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the claims and defenses presented in this Action or Settlement.

The Agreement also includes a mutual non-disparagement provision between Plaintiffs and Defendants. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.,* No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in a FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here the non-disparagement clause contained in this agreement is permissible for two reasons:

1) Initially, the non-disparagement clause is mutual and binds Plaintiffs and Defendant. Following *Cheeks*, Courts have approved settlements containing mutual non-

    disparagement provisions. *See Sadana v. Park Li, Ltd.*, No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in a FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual a non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement provision contains a "carve-out" clause permitting the Parties to make truthful statements regarding their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiff's rights under the FLSA and Defendants' interests in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.*, No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 ( S.D.N.Y. April 4, 2016) (approving a bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC*, No. 15-CV-2588 (AMD)(LB), 2016 U.S. Dist. LEXIS 29158 at *6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal a non-disparagement clause with a "carve-out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc.*, No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving a non-disparagement provision that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

    The parties are represented by experienced counsel who have advised them prior to executing the Settlement Agreement on the significance of the settlement terms and potential implications, including the release terms and non-disparagement clause. Further, the mutual non-disparagement clause is bolstered by additional provisions that provide preliminary steps prior to either party exercising their right to commence an action in the event of a breach of the agreement in an agreed-upon forum.

### IV.    Plaintiffs' Attorney's Fees and Expenses

    As set forth in the Affidavit of Brent E. Pelton, Esq., to date, Plaintiffs' counsel has spent more than 430 hours in prosecuting and settling this matter, resulting in a lodestar of $123,779.18 Pelton Aff. Ex. B. Plaintiffs' counsel has spent $3,345.62 in actual litigation costs, including filing and service of the complaint, taking the deposition of E. Manetta, sending notice of the lawsuit and deadline reminder letters to collective members and paying the mediator's fee for the February 17, 2022 mediation session. *Id.* at Ex. C. The portion of the settlement amount that Plaintiff seeks as attorneys' fees (i.e., $232,217.89) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs which represents a modest 1.8 multiplier of the lodestar

amount and is consistent with what was agreed upon between the Plaintiffs and their counsel in their retainer agreements and consent to become a party plaintiff forms.

The hourly billing rates utilized by Plaintiffs' counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Eastern and Southern Districts of New York. In fact, the same rates have been approved in connection with recent wage and hour default judgments in the Eastern and Southern Districts of New York. *See Guinea v. Garrido Food Corp.*, No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time…are reasonable and consistent with rates allowed in this district."); *Campos v. BKUK 3 Corp.*, No. 18-cv-4036, Dkt. No. 156 (Aug. 10, 2021) (discussing and approving Pelton Graham's attorney and paralegal rates).

For the purposes of this settlement, Defendants take no position with respect to Plaintiffs' counsel's request for attorneys' fees and leave to the Court's determination provided that such attorneys' fees and costs are solely paid out of the Settlement Amount in accordance with the Settlement Agreement.

**V.     The Parties Believe that the Settlement Is Fair and Reasonable**

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principle question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food*, 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreach" by the employer, and the proposed Settlement Agreement was reached only after a full-day mediation session and post-session discussions with an experienced neutral, followed by months of additional talks between counsel, and resulted from vigorous arm's-length negotiations and

revisions to the terms of the Agreement. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks and obstacles of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs. Rather than move forward with lengthy and costly litigation, including dispositive motion practice and trial, settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation.

*    *    *    *    *

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable and adequate to the Plaintiff and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any question regarding this submission.

Respectfully submitted,

By: */s/ Brent E. Pelton*  
Brent E. Pelton, Esq.  
Taylor B. Graham, Esq.  
Kristen E. Boysen, Esq.  
**PELTON GRAHAM LLC**  
111 Broadway, Suite 1503  
New York, New York 10006  

*Attorneys for Plaintiffs*

By: */s/ Andrea H Marcus*  
Andrea H. Marcus, Esq.  
**Law Offices of Andrea H. Marcus**  
161 West 61st Street, Suite 19H  
New York, NY 10023  

*Attorneys for Defendants*

Encls.